# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**3LIONS PUBLISHING, INC.,**

    **Plaintiff,**

v.                                              Case No.  8:14-cv-1210-T-30TBM

**SCRIPTNETICS, LLC,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon both parties' motions for summary judgment (Dkts. 43 & 54) and responses thereto (Dkts. 47 & 55).  Upon review of the motions, responses, record evidence, and being otherwise advised in the premises, the Court concludes that the motions should be granted in part and denied in part.

## BACKGROUND

Plaintiff 3Lions Publishing, Inc. is a corporation that provides, among other things, information, solutions, and guidance to the healthcare industry regarding the implementation of safeguards to comply with the Health Insurance Portability and Accountability Act ("HIPAA").  3Lions owns a website entitled the HIPAA Survival Guide ("HSG") located on the Internet at www.hipaasurvivalguide.com and also owns the copyright to said website. 3Lions offers over two dozen products that serve the HIPAA community including training materials, videos, compliance checklists, and policies.  It also offers a subscription plan that

includes all of 3Lions' products. Customers find 3Lions' products through visiting the website. About ninety percent of 3Lions' website traffic comes from a search on the Internet from a search engine like Google, Yahoo, and Bing.

Defendant Scriptnetics, LLC is a "developer of quality electronic medical records to match medical providers' workflow, rather than fitting everyone to the same mold, achieved by early adoption of the best tablet technologies." On or about April 25, 2014, 3Lions discovered that Scriptnetics' website located at www.medscribbler.com/EHR-and-HIPAA contained content in an article about HIPAA compliant medical records security that appeared to be copied directly from three different HSG website pages. The bulk of the content appeared to come from http://www.hipaasurvivalguide.com/hitech-act-summary.php, 3Lions' most visited webpage. The copied content contained in Scriptnetics' article on its website is attached as Exhibit B to the amended complaint and involves the following text from 3Lions' website:

> The Health Insurance Portability and Accountability Act (HIPAA) was enacted by the U.S. Congress in 1996. The Act is massive in scope with five separate Titles.
>
> When a vendor implies they are HIPAA compliant, the first question you should ask is "under what rule?"
>
> . . . if a health care provider said they were HIPAA compliant, what they likely meant was that they were attempting to comply with the Privacy Rule.
>
> The HITECH Act focuses on the establishment of a national health infrastructure and on providing incentives for the adoption of electronic health records (EHRs). It also provides for "enhanced" privacy protections. This Act now places both the Privacy Rule and the Security Rule as front and center issues for health care providers. Now . . . civil penalties (and potentially criminal penalties also) for non-compliance

The critical aspect of the Business Associate concept is that the Privacy Rule mandates that providers have written contracts with them.  The HITECH Act provides even more stringent requirement on Business Associate relationships

(no contract means non-compliance)

This is a concept that providers, especially small providers, need to pay close attention to.

Certain third parties that manage electronic health records (e.g. . . . HealthVault) do NOT fit this definition and therefore are not covered entities. The HIPAA rules do not (currently) apply to them and therefore their own proprietary privacy policies control.  This is an area that is in flux . . . HHS (and perhaps other agencies) . . .

. . . almost any electronic and media . . . fits the definition . . . thumb drives, hard disks . . . etc.

If health care information is linked to an individual, then it appears to be as universally protected . . . paper

. . . penalties extend up to $250,000, with repeat/uncorrected violations extending up to $1.5 million

Furthermore, under certain conditions . . . civil and criminal penalties now extend to business associates.  Like HIPAA, the HITECH Act does not allow an individual to bring a cause of action against a provider.  However, it does allow a state attorney general to bring an action on behalf of his or her residents . . . HHS is now required to conduct periodic audits of covered entities and business associates.

The HITECH Act now imposes data breach notification requirements for unauthorized uses and disclosure of "unsecured PHI." . . .

If a breach impacts 500 patients or more then HHS must also be notified. Notification will trigger posting the breaching entity's name on HHS' website. Under certain conditions local media will also need to be notified. Furthermore, notification is triggered whether the unsecured breach occurred externally or internally.

On or about April 27, 2014, 3Lions sent Scriptnetics a "First Notice of Copyright Infringement." Subsequently, on or about June 21, 2014, 3Lions discovered that another entity, Private Practice, LLC, also appeared to have copied content from 3Lions' website. The content (copied from 3Lions' website) on Private Practice's website was identical to the copied content on Scriptnetics' website; it also referenced Scriptnetics' product, Medscribbler.

Subsequently, 3Lions filed this action against Scriptnetics alleging copyright infringement, contributory copyright infringement, and unfair competition. Both parties move for summary judgment on various grounds. The Court concludes that issues of material fact preclude summary judgment in either party's favor on the copyright infringement count. The record is clear, however, that 3Lions is entitled to summary judgment on some of Scriptnetics' affirmative defenses (as explained in more detail below) and Scriptnetics is entitled to summary judgment on 3Lions' claims of contributory copyright infringement and unfair competition.

## STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be

no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324.  The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990).  However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**DISCUSSION**

I.   **Copyright Infringement Claim**

    A.   **Prima Facie Case**

Both parties move for summary judgment on 3Lions' copyright infringement claim. The elements of a copyright infringement claim are "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). There is apparently no dispute concerning 3Lions' ownership of the copyright at issue. Therefore, the next inquiry is whether Scriptnetics copied elements of the work that were original.

The record appears undisputed that Scriptnetics copied the text outlined above from 3Lions' website. The critical issue, however, is whether the copied text was sufficiently original. "Originality is the touchstone of copyright protection." *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1332 (M.D. Fla. 2001) (citing *Feist,* 499 U.S. at 345). In *Feist*, the Supreme Court explained:

> To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.

499 U.S. at 345-46. Bare facts are not copyrightable "because facts do not owe their origin to an act of authorship." *Id.* at 347. A compilation of facts, however, may entail the requisite creativity if it features original selection or arrangement. *See id.* at 348. Original selection or arrangement means that the author did not copy the selection or arrangement from another

work and the selection or arrangement was not mechanical or routine. *See id.* at 358. A minimal level of creativity must be involved. *See id.* The standard is not high and "does not require that facts be presented in an innovative or surprising way." *Id.* at 362.

Here, the infringing content was obtained from three pages on 3Lions' website. The content is an analysis or description of the American Recovery and Reinvestment Act ("ARRA"). Although it involves legislative facts that are in the public domain, there is a minimal degree of creativity in 3Lions' analysis, description, and interpretation of the ARRA. The Court cannot determine as a matter of law, however, that the copied content was "substantial."

To prove a case of copyright infringement, 3Lions must show, not only that it had copyright protection, but also that Scriptnetics copied "'so extensive[ly] that it rendered the offending and copyrighted works substantially similar.'" *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1542 (11th Cir. 1996) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.,* 49 F.3d 807, 813 (1st Cir. 1995)). "Two works are substantially similar if 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Palmer v. Braun,* 287 F.3d 1325, 1330 (11th Cir. 2002) (quoting *Leigh v. Warner Bros.,* 212 F.3d 1210, 1214 (11th Cir. 2000)). This issue presents a jury question because reasonable minds could disagree on the outcome. *See Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1358 (N.D. Fla. 2010).

Specifically, whether the copying was substantial, as opposed to *de minimis*, involves quantitative and qualitative considerations. "Quantitative refers to the amount of the

plaintiff's total work that has been reproduced, whereas qualitative refers to the importance of the portion taken to the value of the original work." *Palmer*, 155 F. Supp. 2d at 1337. "This standard, like so many others in copyright law, is far from clear and thus presents the 'classic jury question.'" *Id.* (quoting *Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.,* 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980)).

The record reflects that the copied content represented a very small percentage of 3Lions' website. However, there is evidence supporting 3Lions' position that the content, although seemingly insubstantial in the context of 3Lions' website, was taken from 3Lions' "keystone pages" on its website, pages that have been visited over 250,000 times and account for approximately twenty-five percent of the website's traffic. Accordingly, both parties' motions for summary judgment are denied with respect to the copyright infringement claim. *See Higgins v. Baker,* 309 F. Supp. 635, 637 (S.D.N.Y. 1970) ("Similar material, however small in quantity, may still be deemed substantial if qualitatively important ... and the determination of the copied material's qualitative importance is an issue of fact that can best be determined at trial.").

### B.  Fair Use Defense

Scriptnetics argues that any copying from 3Lions' website constituted "fair use" under the Copyright Act. Fair use is an affirmative defense to a claim of copyright infringement; Scriptnetics included this defense in its answer. Under this affirmative defense, a defendant can refute a claim of copyright infringement if it establishes that it engaged in fair use of the work. *See* 17 U.S.C. § 107 ("Notwithstanding the provisions of sections 106 and 106A, the

fair use of a copyrighted work ...for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.").

"The fair use doctrine ... seeks to balance First Amendment concerns with the protections otherwise afforded authors by the Copyright Act." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010). Fair use "requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (internal citations, quotation marks omitted).

Courts weigh the following four statutory factors to determine whether a defendant's use of a copyrighted work is "fair": "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The fair use doctrine "is an equitable rule of reason; neither the examples of possible fair uses nor the four statutory factors are to be considered exclusive." *Peter Letterese And Assocs., Inc. v. World Inst. Of Scientology Enters.*, 533 F.3d 1287, 1308 (11th Cir. 2008).

The first factor, the purpose and character of the use, weighs in favor of 3Lions because the record reflects that Scriptnetics used the copied work to promote its "Medscribbler" product on its website. The remaining factors, however, are not dispositive

in either party's favor because they involve disputed facts that the Court cannot resolve. For example, as explained above, it is unclear if the copied content from 3Lions' website was "substantial;" a jury could find that any copying was *de minimis*. This disputed issue is material to the second and third factors. *See Home Design Servs., Inc. v. Hibiscus Homes of Florida, Inc.*, No. 603CV1860ORL19KRS, 2005 WL 3445522, at *10 (M.D. Fla. Dec. 14, 2005) (denying summary judgment on defendant's fair use defense because there were disputed facts regarding the amount and substantiality of the portion used in relation to the copyrighted work as a whole); *see also Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1284 (M.D. Fla. 2008) (denying summary judgment on defendant's fair use defense due to "underlying issues of material fact" that impacted the relevant factors). Accordingly, the parties' motions for summary judgment are denied with respect to the fair use defense.[1]

### C.     License Defense

Scriptnetics argues that any use of 3Lions' work was permitted under a creative commons license located on 3Lions' website. Specifically, 3Lions' website states in relevant part:

> the copying and distribution of the PDF Version of the HIPAA Survival Guide is controlled by the creative commons license in the appendix. Essentially, you are free to use the PDF version of the HIPAA Survival Guide in a non-commercial manner (for more information, please view our Terms of Use page). We encourage such use in order that we may collectively continue the conversation. The privacy and security issues that HIPAA addresses are important public policy considerations, but having gone into the "belly of the whale" we also recognize the

---

[1] Notably, the Court also cannot resolve the fourth factor because the effect on the potential market is unclear. 3Lions does not appear to have any actual damages resulting from Scriptnetics' use of the copied work.

> challenges providers face as they grapple with this immensely complex piece of legislation.

(Dkt. 49-2). The Court cannot determine this issue as a matter of law because the record presents evidence that Scriptnetics was not operating under any express or implied license to use the subject work. For example, the CEO of Scriptnetics testified clearly during his deposition that Scriptnetics' use of the copied work was not based on 3Lions' creative commons license - rather, Scriptnetics believed its use of the subject work constituted fair use. Moreover, there are disputed facts related to whether Scriptnetics' use was "non-commercial." Accordingly, neither party is entitled to summary judgment on this defense.

### D. Other Defenses

3Lions' motion for summary judgment moves for judgment on various defenses alleged in Scriptnetics' Answer and Affirmative Defenses in defense of the copyright infringement claim (Dkt. 17). Scriptnetics did not address the majority of these purported affirmative defenses in its response. And the record does not show any facts in support of the following affirmative defenses: equitable estoppel; unclean hands; statute of limitations; and misuse of copyright. Thus, these affirmative defenses fail as a matter of law.[2]

## II. Contributory Copyright Infringement

Scriptnetics moves for summary judgment on 3Lions' contributory copyright infringement claim. It appears that the only factual basis in support of this claim is that a third party, Private Practice, LLC, had the same copied content on its website and referenced

---

[2] The "defenses" related to 3Lions' entitlement to damages and attorney's fees are not affirmative defenses and need not be addressed at this time.

Scriptnetics' product, Medscribbler.  This evidence, standing alone, is insufficient to establish a claim as a matter of law.  This is because a "contributory infringer is one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1295 (M.D. Fla. 2010), *aff'd*, 425 Fed. Appx. 833 (11th Cir. 2011) (internal quotations and citations omitted).

In its response, 3Lions does not point to any evidence establishing that Scriptnetics induced, caused, or materially contributed to Private Practice's infringing conduct.  Indeed, 3Lions addresses the claim in one paragraph of its response, arguing: "Why else would a third party have Defendant's exact content on its website unless it had a relationship with Defendant and intended to use said content to promote Defendant's product?"  (Dkt. 55). Such a question that is tantamount to supposition is woefully deficient to establish a genuine issue for trial.  Simply put, 3Lions needs to and has failed to point to *evidence* in support of this claim.  Accordingly, Scriptnetics' motion is granted to the extent that it is entitled to summary judgment on the contributory copyright infringement claim.

**III.  Unfair Competition**

Scriptnetics moves for summary judgment on 3Lions' unfair competition claim.  "To a [sic] state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324-25 (M.D. Fla. 2007) (citations omitted).  Like the contributory copyright infringement claim, 3Lions

points to no record evidence establishing a genuine issue with respect to this claim. Accordingly, Scriptnetics' motion is granted to the extent that it is entitled to summary judgment on the unfair competition claim.

It is therefore ORDERED AND ADJUDGED that:

1. The parties' motions for summary judgment (Dkts. 43 & 54) are granted in part and denied in part for the reasons stated herein.

2. The Court defers entry of judgment in Defendant's favor on Counts II and III until the conclusion of this case. Accordingly, any argument related to the entitlement of attorney's fees will also be addressed at the conclusion of this case.

**DONE** and **ORDERED** in Tampa, Florida on June 26, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2014\14-cv-1210.sumjudg-43and54.wpd